United States District Court
Southern District of Texas
**ENTERED**
October 17, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00163 |
| | § | |
| ISAAC KWARTENG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff asserts claims against Defendants under the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated for purposes of screening ADA/RA claims against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, and Bobby Lumpkin** in their official capacities.  Accordingly, it is respectfully recommended that these claims be **RETAINED**.  The undersigned will order service on these four defendants.

For the reasons set forth below, the undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, Christi McGlothin, and Bobby Lumpkin** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and (2) Plaintiff's remaining Eighth Amendment, due process and ADA/RA claims against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, Christi McGlothin, and Bobby Lumpkin** in their individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Dr. Isaac Kwarteng (Dr. Kwarteng); (2) McConnell Unit Warden Jerry Sanchez (Sanchez); (3) TDCJ Director Bobby Lumpkin (Lumpkin); (4) Dr. Lanette Linthicum (Dr. Linthicum); and (5) Christi

McGlothin (McGlothin).[1]   Plaintiff generally claims that Defendants violated his Eighth Amendment, due process, and ADA/RA rights in connection with his participation in the Cognitive Intervention Classroom Program (CICP).   In his Original Complaint, Plaintiff seeks monetary relief.  (D.E. 1, p. 10).

On August 30, 2022, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his claims.  The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff had turned 50 years old.  He is 6'0" tall and weighs 213 pounds.  (D.E. 8, p. 3).  Plaintiff arrived at the McConnell Unit on October 1, 2021.  (*Id.*).

Plaintiff describes the CICP as a class which helps inmates make better decisions in their daily life and activities, manage their anger, and help inmates develop a better understanding of others.  (*Id.* at 38).  In order to participate in the CICP, inmates simply sign up for it.  (*Id.*).  Some inmates are required to take the class in order to make parole. (*Id.*).

Plaintiff participated in the class for only five days.  (*Id.*).  Plaintiff has both physical and mental disabilities which prevented him from being able to stay in and/or attend the CICP.  (*Id.* at 39-40).  Plaintiff has been diagnosed with schizophrenia, a depressive disorder, and PTSD.  (*Id.* at 40).  As a result of these mental disorders, Plaintiff is unable

---

[1] The Clerk of Court has listed one defendant's name on the docket report as "Christi McGlolthin."  However, a review of Plaintiff's Original Complaint reveals that this defendant's last name is "McGlothin."
[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

to concentrate or think while in class.  (*Id.*).  Plaintiff hears voices, hallucinates, and anxiety.  (*Id.*). Plaintiff suffers from physical disabilities making him unable to sit for a long periods without pain.  (*Id.*).  Plaintiff cannot sit because his legs become swollen and cause him pain.  (*Id.*).

Plaintiff alleges that the CICP meets daily from Monday through Friday and lasts for three hours from 8:00 a.m. to 11:00 a.m.  (*Id.*).  Other than a bathroom break, there are no breaks during the three-hour class.  (*Id.* at 41).  Plaintiff was not provided a way to elevate his leg during class or a chair which could properly support his body while sitting in the class.  (*Id.*).

Plaintiff alleges that Dr. Kwarteng knew that he was taking the CICP but did not provide him with any medical orders directing him to participate the entire class.  (*Id.*).  Plaintiff cites policies and practices implemented by Dr. Kwarteng with regard to: (1) having no breaks in the CICP to accommodate his disabilities; (2) being provided no pain medications enabling him to sit through a class; (3) not having the opportunity to meet with someone one on one when Plaintiff is unable to concentrate or speak.  (*Id.* at 41-42).  Plaintiff asserts that Dr. Kwarteng failed to provide him with reasonable accommodations in the form of having either a special chair to elevate his leg or multiple breaks during the class.  (*Id.* at 43).  With regard to his Eighth Amendment and ADA/RA claims, Plaintiff sues Dr. Kwarteng in his individual and official capacities.  (*Id.* at 43-44).

Plaintiff sent Warden Sanchez I-60s complaining about his inability to access the CICP, to which he received no responses.  (*Id.* at 44).  Plaintiff holds Sanchez responsible

for failing to implement or adopt non-discriminatory policies that provide him reasonable accommodations to attend the CICP by allowing multiple breaks or special seating. (*Id.* at 44-45). With regard to his Eighth Amendment and ADA/RA claims, Plaintiff sues Sanchez in his individual and official capacities. (*Id.* at 45).

McGlothin wrote a disciplinary report on Plaintiff for failing to attend the CICP. (*Id.* at 45-46). In the report, McGlothin failed to indicate that Plaintiff missed the class due to illness. (*Id.* at 45-46). Even though Plaintiff presented evidence of his medical conditions and disabilities, Plaintiff was found guilty of not attending the class. (*Id.* at 46-47). Plaintiff received a verbal reprimand and the report was placed in his file. (*Id.* at 47). Plaintiff asserts that McGlothin intentionally discriminated against him based on his disabilities because the reason he did not attend the class was due to his disabilities. (*Id.*). With respect to his constitutional and ADA/RA claims, Plaintiff sues McGlothin in her individual and official capacities. (*Id.*).

Plaintiff did not communicate with either Dr. Linthicum or TDCJ Director Lumpkin regarding his lack of access to the CICP. (*Id.* at 47-48). Plaintiff holds Dr. Linthicum and Lumpkin responsible for failing to implement or adopt non-discriminatory policies that provide him with reasonable accommodations to attend the CICP by allowing multiple breaks or special seating. (*Id.* at 48-49). With respect to his Eighth Amendment and ADA/RA claims, Plaintiff sues Dr. Linthicum and Lumpkin in their individual and official capacities. (*Id.*).

Plaintiff clarified in his *Spears* hearing testimony that he seeks monetary relief and injunctive relief in the form of obtaining reasonable accommodations in the form of multiple breaks during the class and/or an adequate chair for his disabilities.  (*Id.* at 49-50).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but

whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

## IV.   DISCUSSION

### A.   Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Id.* at 303-04.  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983."  *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

### (1)   Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### *(2)   Eighth Amendment - Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong.  *Id.* at 839.  Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm."  *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted* 2022 WL

23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  A prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm.  *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs by not allowing him access to the CICP.  Plaintiff alleges that Dr. Kwarteng failed to provide him with a medical order whereby he could attend the entire program. Plaintiff seeks to each defendant responsible for failing to enact certain policies enabling him to attend the CICP.

The Eighth Amendment does not require prison officials to provide inmates with rehabilitation programs.  *See Newman v. State of Alabama*, 559 F.2d 283, 291 (5th Cir. 1977) "Failure of prison authorities to provide a rehabilitation program, by itself, does not constitute cruel and unusual punishment.") (citing *McCray v. Sullivan*, 509 F.2d 1332, 1335 (5th Cir. 1975)), *rev'd in part on other grounds by Alabama v. Pugh*, 438 U.S. 781 (1978).  The Fifth Circuit explained in *Newman* that:

> If the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of cruel and unusual punishment, that ends its obligations under Amendment Eight. The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration.

*Newman*, 559 F.2d at 291.

Plaintiff describes the CICP as a self-improvement class to assist inmates in their decision-making process, manage their anger, and relate to other inmates help inmates develop a better understanding of others.  (D.E. 8, p. at 38).   Plaintiff alleges nothing to suggest that the denial of access to this self-improvement program, either through Dr.

Kwarteng's actions or Defendants' failure to enact certain policies, exposed him to a substantial risk of harm or that Defendants were aware of exposure to a substantia risk of harm and consciously disregarded that risk. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Defendants in their individual and official capacities be dismissed with prejudice for failure to state a claim for relief.

### (3)   *Due Process*

Liberally construed, Plaintiff claims that McGlothin violated his due process rights when she wrote a disciplinary report against Plaintiff for failing to attend the CICP and not indicating in the report that Plaintiff had missed the class due to illness. (D.E. 8, pp. 45-46). Plaintiff testified that he was found guilty of failing to attend the class and was subjected to a verbal reprimand as well as the disciplinary report being placed in his file. (*Id.* at 47).

The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). "It is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87).

The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Granting Plaintiff relief as to his due process claim against McGlothin would necessarily imply the invalidity of his disciplinary conviction for not attending the CICP class. *See Terrell v. O'Neil*, No. 9:20cv107, 2021 WL 3738839, at *2 (E.D. Tex. Aug. 24, 2021) (concluding that a finding in favor of inmate's due process claim, where he challenges a prison official's decision to disregard evidence of innocence, "would therefore necessarily imply that his disciplinary conviction was invalid"). Plaintiff's testimony reflects that his disciplinary conviction for which he received a verbal reprimand has not been overturned on appeal or set aside in a habeas corpus proceeding. Because Plaintiff has not successfully had this disciplinary decision set aside, he cannot seek any relief in this case with respect to his due process claim against McGlothin.

Moreover, the Supreme Court has held that due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement. *Sandin*

*v. Conner*, 515 U.S. 472, 484-86 (1995).   In other words, "[p]risoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest."  *Hall v. Thaler*, No. H-07-0763, 2010 WL 883730, *6 (S.D. Tex. Mar. 11, 2010).

In connection with McGlothin's disciplinary report, Plaintiff was not subjected to any sanction constituting an "atypical and significant hardship" or otherwise adversely affected the duration of Plaintiff's sentence.  *See Ward v. Daly*, No. 6:11cv288, 2012 WL 4815400, at *3 (E.D. Tex. July 31, 2012), *adopted* 2012 WL 4812490 (E.D. Tex. Oct. 10, 2012) (recognizing that a verbal reprimand imposed as a disciplinary sanction does not implicate a constitutionally-protected protected liberty interest).   Accordingly, the undersigned respectfully recommends that Plaintiff's due process claim against McGlothin be dismissed as frivolous and/or for failure to state a claim for relief.

### B.  ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.   29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim.  *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).  The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry.  *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir.

2014).  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations."  *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners."  *Nottingham v. Richardson*, 499 F. App'x 368, 377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'").  Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner."  *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL

522778, at *2 (N.D. Miss. Jan. 23, 2018)).  Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

### *(1) Individual Capacity*

Plaintiff sues Defendants in their individual capacities with respect to his ADA/RA claims.  A plaintiff, however, cannot sue prison officials in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376, n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted* 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claims against Defendants in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Official Capacity*

Plaintiff brings his ADA/RA claims against Defendants in their official capacities.  The ADA does not "itself prohibit suits against both the State and its agencies."  *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities

and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

## ADA Claims Related to McGlothin's Disciplinary Action

Plaintiff claims that McGlothin violated his ADA/RA rights in connection with her disciplinary report brought against Plaintiff for failing to attend the CICP.  (D.E. 8, pp. 45-46).  Plaintiff claims that McGlothin intentionally discriminated against him based on his disabilities because the reason he did not attend the class was due to his disabilities.  (*Id.*).

In *Gutierrez Martinez v. Ross-Taylor*, 67 F. App'x 243, 2003 WL 21140057 (5th Cir. Apr. 23, 2003), the Fifth Circuit held the inmate Gutierrez's ADA claim was "in fact a thinly veiled challenge to the validity of his disciplinary conviction."  *Id.*  The Fifth Circuit held that "absent proof that his disciplinary convictions have been overturned or otherwise declared invalid, Gutierrez cannot bring a civil action seeking damages based on a finding of guilt in his disciplinary cases, because success on his civil claim would necessarily imply the invalidity of his disciplinary convictions."  *Id.* (citing *Clarke*, 154 F.3d at 189).  Similar to the plaintiff in *Gutierrez*, Plaintiff's ADA/RA claims also constitute thinly veiled challenges to his conviction resulting from McGlothin's disciplinary report.

Plaintiff, therefore, cannot bring an ADA/RA claim against McGlothin "absent a showing the conviction has been overturned or otherwise declared invalid, which he has not done."  *See Williams v. Bergt*, No. 5:18cv63, 2019 WL 7560433, at *2 (E.D. Tex. Apr.

18 / 23

15, 2019), *adopted* 2019 WL 5558060 (E.D. Tex. Oct. 29, 2019).  Accordingly, the
undersigned respectfully recommends that Plaintiff's ADA/RA claim against McGlothin
be dismissed as frivolous and/or for failure to state a claim for relief.

### ADA Claims Related to Plaintiff's Access to the CICP

In this action, Plaintiff does not allege that the CICP was inadequate or that
Defendants failed to attend to his mental health or medical needs in connection with the
class.  Rather, with respect to his ADA/RA claims, Plaintiff claims that Dr. Kwarteng,
Sanchez, Dr. Linthicum, and Lumpkin discriminated against him based on his mental and
physical disabilities by denying him reasonable accommodations, either though lack of
actions or policies, for him to attend and complete the CICP.  Plaintiff alleges that:

- The CICP meets daily from Monday through Friday and lasts for three
hours from 8:00 a.m. to 11:00 a.m.

- Other than a bathroom break, there are no breaks during the three-
hour class.

- Plaintiff has both physical and mental disabilities which prevented
him from being able to attend the CICP or, when he was able to attend, stay
in the class for the whole three hours it was in session.

- Plaintiff has been diagnosed with schizophrenia, a depressive
disorder, and PTSD, which impact his ability to concentrate or think.

- Plaintiff suffers from physical disabilities causing him to not be able
to sit for a long periods due to pain and his legs becoming swollen.

- Other than a bathroom break, there are no breaks during the three-hour class.

- Plaintiff was provided no accommodations to attend the class, such as an elevation device for his leg or a chair which can properly support his body while sitting in the class.

- Plaintiff participated in the CICP for only five days.

(D.E. 8, pp. 38-41).

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently states he suffers from mental and physical impairments that greatly limit his daily life activities and, at least for purposes of this screening, indicate he is a "qualified individual with a disability."[3]

Plaintiff's allegations, accepted as true, indicate that he cannot fully access the CICP because his mental and physical disabilities prevented him from being able to attend the class or sit through a class session.  Such allegations suggest that he was subjected to discrimination based on the denial of reasonable accommodations for his disabilities so that he could attend and complete the class.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 726 (5th Cir. 2020) (holding that a request for a mobility device is a request for a reasonable

---

[3] "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population." *Peña Arita v. County of Starr, Texas*, No. 7:19-cv-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sep. 11, 2020) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

accommodation, rather than medical treatment); *Wright v. Texas Dept. of Criminal Justice*, No. 7:13-CV-0116, 2013 WL 6578994, at *4 (N.D. Tex. Dec. 16, 2013) (finding that prisoner stated an ADA claim based on allegations that he was denied a reasonable accommodation his serious mental illness by not being housed with other people or in a safe cell).

At this early stage in the proceedings, the undersigned respectfully recommends that Plaintiff's ADA/RA claims be retained against Dr. Kwarteng, Sanchez, Dr. Linthicum, and Lumpkin in their official capacities. Further factual and legal development of this issue is necessary to determine whether any of these defendants in their official capacities should be dismissed or whether a state agency such as the TDCJ or the University of Texas Medical Branch (UTMB) should be substituted in their place.

## V.   RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's ADA/RA claims against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, and Bobby Lumpkin** in their official capacities. The undersigned will order service on Defendants by separate order.

The undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, Christi McGlothin, and Bobby Lumpkin** in their official capacities be **DISMISSED without**

**prejudice** as barred by the Eleventh Amendment; and (2) Plaintiff's remaining Eighth Amendment, due process and ADA/RA claims against **Dr. Isaac Kwarteng, Jerry Sanchez, Dr. Lanette Linthicum, Christi McGlothin, and Bobby Lumpkin** in their individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

Respectfully submitted on October 17, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).