United States District Court
Southern District of Texas
**ENTERED**
April 27, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00163 |
| | § | |
| ISAAC KWARTENG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff brings claims in this action under the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12189, and the Rehabilitation Act (RA), 29 U.S.C. § 701-797.

Pending before the Court is a Motion to Dismiss filed by Dr. Isaac Kwarteng, Dr. Lanette Linthicum, Jerry Sanchez, and Bobby Lumpkin. (D.E. 13). For the reasons set forth below, the undersigned respectfully recommends that this motion be **GRANTED in part** and **DENIED in part**.

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Dr. Isaac Kwarteng (Dr. Kwarteng); (2) McConnell Unit Warden Jerry Sanchez (Warden Sanchez); (3) TDCJ Director Bobby Lumpkin (Director Lumpkin); (4) Dr. Lanette Linthicum (Dr. Linthicum); and (5) Christi McGlothin (McGlothin).  Plaintiff generally claims that Defendants violated his Eighth Amendment, due process, and ADA/RA rights in connection with his participation in the Cognitive Intervention Classroom Program (CICP). Plaintiff seeks monetary relief and injunctive relief in the form of reasonable accommodations consisting of multiple breaks during the class and/or an adequate chair for his disabilities.  (D.E. 1, p. 10; D.E. 8, p. 3).

On August 30, 2022, the undersigned conducted a *Spears*[1] hearing where Plaintiff was given an opportunity to explain his claims.  On October 17, 2022, the undersigned

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

issued a Memorandum and Recommendation (M&R), recommending that the Court: (1) retain Plaintiff's ADA/RA claims against Dr. Isaac Kwarteng, Warden Sanchez, Dr. Linthicum, and Director Lumpkin in their official capacities; (2) dismiss without prejudice Plaintiff's § 1983 claims for money damages against Defendants in their official capacities as barred by the Eleventh Amendment; and (3) dismiss with prejudice Plaintiff's remaining Eighth Amendment, due process, and ADA/RA claims against Defendants in their individual and official capacities as frivolous and/or for failure to state a claim for relief. (D.E. 10). District Judge David S. Morales adopted the M&R in its entirety. (D.E. 16).

On December 1, 2022, Dr. Kwarteng, Dr. Linthicum, Warden Sanchez, and Director Lumpkin (collectively referred to hereinafter as "Defendants") filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 13). Plaintiff subsequently filed two responses. (D.E. 14, 15).

## III.    PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations relevant to Defendants' Motion to Dismiss are summarized as follows. Plaintiff describes the CICP as a class which helps inmates make better decisions in their daily life and activities, manage their anger, and help inmates develop a better understanding of others. (D.E. 8, p. 38). In order to participate in the CICP, inmates simply sign up for it. (*Id.*). Some inmates are required to take the class in order to make parole. (*Id.*).

Plaintiff participated in the class for only five days. (*Id.*). Plaintiff has both physical and mental disabilities which prevented him from being able to stay in and/or attend the CICP. (*Id.* at 39-40). Plaintiff has been diagnosed with schizophrenia, a depressive disorder, and PTSD. (*Id.* at 40). As a result of these mental disorders, Plaintiff is unable to concentrate or think while in class. (*Id.*). Plaintiff hears voices, hallucinates, and anxiety. (*Id.*). Plaintiff suffers from physical disabilities making him unable to sit for long periods without pain. (*Id.*). Plaintiff cannot sit because his legs become swollen and cause him pain. (*Id.*).

Plaintiff alleges that the CICP meets daily from Monday through Friday and lasts for three hours from 8:00 a.m. to 11:00 a.m. (*Id.*). Other than a bathroom break, there are no breaks during the three-hour class. (*Id.* at 41). Plaintiff was not provided a way to elevate his leg during class or a chair which could properly support his body while sitting in the class. (*Id.*).

Plaintiff alleges that Dr. Kwarteng knew that he was taking the CICP but did not provide him with any medical orders directing him to participate in the entire class. (*Id.*). Plaintiff states that Dr. Kwarteng has implemented the following policies and practices: (1) having no breaks in the CICP to accommodate his disabilities; (2) providing no pain medications enabling him to sit through a class; (3) providing no opportunities to meet with someone one on one when Plaintiff is unable to concentrate or speak. (*Id.* at 41-42). Plaintiff asserts that Dr. Kwarteng failed to provide him with reasonable accommodations

in the form of having either a special chair to elevate his leg or multiple breaks during the class.  (*Id.* at 43).

Plaintiff sent Warden Sanchez I-60s complaining about his inability to access the CICP, to which he received no responses.  (*Id.* at 44).  Plaintiff holds Sanchez responsible for failing to implement or adopt non-discriminatory policies that provide him reasonable accommodations to attend the CICP by allowing multiple breaks or special seating.  (*Id.* at 44-45).

Plaintiff did not communicate with either Dr. Linthicum or TDCJ Director Lumpkin regarding his lack of access to the CICP.  (*Id.* at 47-48).  Plaintiff holds Dr. Linthicum and Lumpkin responsible for failing to implement or adopt non-discriminatory policies that provide him with reasonable accommodations to attend the CICP by allowing multiple breaks or special seating.  (*Id.* at 48-49).

Plaintiff has attached to his original complaint a Step 1 grievance, in which he complained about discrimination in violation of both the ADA and RA with regard to the denial of his participation in the CICP.  (D.E. 1-1, pp. 1-2).  Plaintiff writes in his Step 1 grievance that the RA applies because he was subjected to discrimination by a public entity receiving federal funds.  (*Id.* at 2).

## IV.   LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail

on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Courts may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Pickett v. Tex. Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022).  Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021).

Rule 12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal,* 556 U.S. at 678.  "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55.  When considering a Rule 12(6)(b) motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Wright v. Dollar Tree Stores, Inc.*, No. 3:14-CV-01472, 2014 WL 11456816, at *4 (N.D. Tex. Sep. 16, 2014) (recognizing that a Rule 12(6)(b) motion generally limits a court to consideration of the well-pleaded allegations of Plaintiff's complaint, including any attachments thereto or documents incorporated by reference herein).

## V.    DISCUSSION

### A.    Monetary Relief

With respect to the ADA and RA claims retained in this case, Defendants contend they are immune from money damages in their official capacities under the Eleventh Amendment because Plaintiff has not alleged conduct that actually violates the Fourteenth Amendment.  (D.E. 13, p. 3).  Plaintiff responds that sovereign immunity has been abrogated because the ADA provides for compensatory damages upon a showing of intentional discrimination on the basis of a disability.  (D.E. 14, p. 1; D.E. 15, p. 1).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court).

The Eleventh Amendment bar, when it applies, implicates the Court's subject-matter jurisdiction. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996); *see also Pickett*, 37 F.4th at 1026 ("[A] claim barred by sovereign immunity lies outside federal courts' subject-matter jurisdiction."). The Eleventh Amendment operates to bar a plaintiff's ADA claims seeking money damages against defendants in their official capacities "unless the state has waived or Congress has validly abrogated sovereign immunity." *Douthit v. Collier*, No. 20-20550, 2022 WL 5240152, at *3 (5th Cir. Oct. 5, 2022) (unpublished) (citations omitted). Because Texas has not waived sovereign immunity by consenting to suit, the question is whether Congress has validly abrogated sovereign immunity. *Id.*

"Title II [of the ADA] abrogates state sovereign immunity where it prohibits conduct that violates the Fourteenth Amendment." *Pickett*, 37 F.4th at 1026 (citing *United*

*States v. Georgia*, 546 U.S. 151, 158-59 (2006)).   The Fifth Circuit in *Pickett* further explains:

> Insofar as it prohibits conduct that does not directly violate the Fourteenth Amendment, Title II can abrogate sovereign immunity only where Congress's abrogation power is "nevertheless valid."  Congress's abrogation power is "nevertheless valid" where Title II imposes requirements that are "congruent and proportional" to an identified "pattern of [unconstitutional] exclusion and discrimination"—even if it sweeps in some conduct that it not unconstitutional.  In other words, Section 5 of the Fourteenth Amendment contains an enumerated power capable of abrogating state sovereign immunity, subject to the limitations that ordinarily accompany that position.

*Id.*

Relying on *United States v. Georgia*, the *Pickett* court set forth that courts must answer the following three questions to determine whether defendants are entitled to sovereign immunity:

> *First*, has [the plaintiff] stated a plausible Title II claim?  *Second*, to the extent that [he] has, do those allegations also state a violation of the Fourteenth Amendment?  *Third*, to the extent that [the plaintiff] has stated a plausible Title II claim that is not *also* a Fourteenth Amendment violation, has [he] identified prohibited conduct that is congruent and proportional to a pattern of Fourteenth Amendment violations that Congress sought to remedy?

*Id.* (emphasis in original).  As to the first question posed by *Pickett*, the Court has already determined that Plaintiff stated a plausible ADA claim that Defendants discriminated against him based on his disabilities by denying him reasonable accommodations, either

through lack of actions or policies, for him to attend and complete the CIPP. (D.E.'s 10 & 16).

The second *Pickett* question considers whether Plaintiff has stated a claim under the Fourteenth Amendment. In both his original complaint and testimony provided at the *Spears* hearing, Plaintiff claimed that Defendants violated his Eighth Amendment rights when they acted with deliberate indifference to his serious medical needs by not allowing him access to the CICP.[2] (D.E. 1; D.E. 8, pp. 38-49). Because the Eighth Amendment applies to the states through the Fourteenth Amendment, an ADA violation that is also an Eighth Amendment violation actually violates the Fourteenth Amendment." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). The Court, however, has dismissed Plaintiff's Eighth Amendment claims, finding that he failed to state a plausible claim for relief. (D.E. 10, p. 12; D.E. 16). With regard to the second question, therefore, Plaintiff has not stated a violation of the Fourteenth Amendment.

Because Plaintiff has stated an ADA claim under Title II and not a Fourteenth Amendment violation, the Court must now consider whether has Plaintiff has "identified prohibited conduct that is congruent and proportional to a pattern of Fourteenth Amendment violations that Congress sought to remedy." *Pickett*, 37 F.4th at 1026. In making this determination, courts utilize the three-part analysis – also known as the "congruence and proportionality" text – articulated in *City of Boerne v. Flores*, 521 U.S.

---

[2] Plaintiff also asserted related claims under the Fourteenth Amendment's Due Process Clause, the ADA, and RA against another defendant, Christi McGlothin. It is unnecessary to consider these claims as part of the analysis since the Court already has dismissed the claims brought against McGlothin. (D.E.'s 10 and 16).

507 (1997). *See Tennessee v. Lane*, 541 U.S. 509, 520 (2004); *Lenti v. Connecticut*, 3:20-cv-127, 2020 WL 4275600, at *9 (D. Conn. Jul. 24, 2020). The first step in the analysis is "to identify the constitutional right or rights that Congress sought to enforce when it enacted Title II." *Lane*, 531 U.S. at 365 (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001)). The second step is to determine "whether [in enacting the ADA] Congress identified a history and pattern of unconstitutional discrimination by the States against the disabled." *Garrett*, 531 U.S. at 368-69. Under the third and final step in the analysis, courts must consider whether Title II is a congruent and proportional response to the constitutional violations Congress sought to remedy. *See Lane*, 541 U.S. at 530-33; *Wilke v. Cole*, No. 12-CV-1231, 2014 WL 7237019, at *6 (E.D. Wisc. Dec. 17, 2014).

"Under the first step of the *City of Boerne* test, [the] Court must 'identify with some precision the scope of the constitutional right at issue.'" *Wilke*, 2014 WL 7237019, at *7 (quoting *Garrett*, 531 U.S at 365). Here, the constitutional right at issue is Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment, as incorporated against the States through the Fourteenth Amendment. The Supreme Court recognizes that Title II implicates a "constellation of rights applicable in the prison context." *Georgia*, 546 U.S at 161 (Stevens, J. concurring). "Specifically, Title II seeks to curb arbitrary or irrational exclusion of disabled inmates from the services, programs, or benefits provided by the state and to prevent cruel and unusual punishment flowing from the denial of adequate facilities or services to disabled inmates." *Wilke*, 2014 WL 7237019, at *7 (citing *Georgia*, 546 U.S. at 159). The first step, therefore, is satisfied.

The *City of Boerne's* second step requires courts to consider whether a history of violations of the foregoing right by the states exists.  *See Lane*, 541 U.S. at 523.  Several courts have interpreted the Supreme Court's decision in *Lane* "as 'conclusively establishing that Title II as a whole survives the historical inquiry under the *City of Boerne* test.'"  *Lenti*, 2020 WL 4275600, at *10 (quoting *Wilke*, 2014 WL 7237019, at *7); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 487 (4th Cir. 2005); *Chase v. Baskerville*, 508 F. Supp. 2d 492, 500 (E.D. Va. 2007).  The Supreme Court in *Lane* expressly listed numerous examples when noting that Title II was "designed to address … a pattern of unequal treatment in the administration of public services, programs, and activities, including the penal system …."  *Lane*, 541 U.S. at 524-25.  The second step of the *City of Boerne*, therefore, is satisfied.

"Under the third step, the Court must determine whether Title II is an appropriately tailored response in light of its object of enforcing the … Eighth[] and Fourteenth Amendment rights identified under step one and the history and pattern of unequal treatment identified under step two."  *Wilke*, 2014 WL 7237019, at *7.  The Supreme Court in *Lane* recognized that:

> While § 5 [of the Fourteenth Amendment] authorizes Congress to enact reasonably prophylactic remedial legislation, the appropriateness of the remedy depends on the gravity of the harm it seeks to prevent.  Difficult and intractable problems require powerful remedies but it is also true that strong measures appropriate to address one harm may be an unwarranted response to another, lesser one.

*Lane*, 541 U.S. at 523-24 (cleaned up).

12 / 20

In *Wilke*, the district court held that the plaintiff's ADA claim failed the *City of Boerne's* third step, explaining as follows:

> Title II's prophylactic demand for reasonable accommodation requires far more than does the Constitution.  Title II's demand for modification or accommodation is not tailored to instances when the failure to do so will likely result in an actual constitutional violation.  Rather, Title II indiscriminately prohibits far more state conduct and in many more areas of prison administration than conceivably necessary to enforce any relevant constitutional rights.  Thus, in the prison context, Title II fails the third step of the *City of Boerne* test because it is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.

*Wilke*, 2014 WL 7237019, at *7 (internal quotations and citations omitted).  While echoing the rational set forth in *Wilke*, the district court in *Lenti* further noted that "federal courts should be especially cautious before interfering with the administration of a State's prison system."  *Lenti*, 2020 WL 4275600, at *10.

Here, Plaintiff claims that Defendants have violated his ADA rights by failing to implement or adopt non-discriminatory policies that provide him reasonable accommodations to attend the CICP in the form of multiple breaks or special seating. Based on the reasoning set forth in both *Wilke* and *Lenti*, the undersigned concludes that the *City of Boerne's* third step has not been satisfied. Indeed, similar to the plaintiff's ADA claim in *Lenti* challenging the denial "of access to a handicapped accessible shower for nine days," Plaintiff's ADA claim also falls "so far afield from the essence of the Eighth Amendment's prohibition against cruel and unusual punishment."  *Lenti*, 2020 WL

4275600, at *10; *see also Wilke*, 2014 WL 7237019, at *7 (finding that, "in the context of state prisons, Title II validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the States' only for 'conduct that actually violates the Fourteenth Amendment'") (quoting *Georgia*, 546 U.S. at 159).

Accordingly, Defendants' Motion to Dismiss (D.E. 13) should be granted to the extent they are entitled to Eleventh Amendment immunity as to Plaintiff's ADA claim for monetary damages against them in their official capacities.  Plaintiff's ADA claim seeking monetary damages against Defendants, therefore, should be dismissed without prejudice.[3]

Along with his ADA claim, Plaintiff also raises a parallel RA claim for monetary relief in this action against Defendants in their official capacities.  Without making any arguments targeted at Plaintiff's RA claim, Defendants also seek dismissal of same.  (D.E. 13, pp. 3-4).  The RA provides that "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).

"State entities that accept federal funding knowingly and voluntarily waive their sovereign immunity to suit under § 504 of the [RA]."  *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272,

---

[3] "Because Eleventh Amendment sovereign immunity deprives this Court of jurisdiction over [claims seeking money damages against prison officials in their official capacities], the dismissal [of such claims] must be without prejudice." *Bell v. Hinojosa*, No. 2:22-CV-00140, 2023 WL 2072412, at *4 (S.D. Tex. Feb. 16, 2023) (Ramos, J.) (citing *Warnock*, 88 F.3d at 343).

274 (5th Cir. 2005) (en banc)).  In a Step 1 grievance attached to his original complaint, Plaintiff asserted that the RA applies because he was subjected to discrimination by a public entity receiving federal funds.  (D.E. 1-1, p. 2).  In their Motion to Dismiss, Defendants have raised no argument contesting the receipt of federal funds.  Accordingly, Defendants' motion (D.E. 13) should be denied to the extent they seek sovereign immunity as to Plaintiff's RA claim for monetary damages against them in their official capacities.

### B. Injunctive Relief

Defendants initially contend that Plaintiff is not entitled to injunctive relief on the basis that the *Ex parte Young* doctrine does not apply.  (D.E. 13, p. 4).  Defendants further contend that Plaintiff's allegations fail to connect any defendant to the CICP program or that any of them had the requisite authority to grant Plaintiff the relief he seeks.  (*Id.* at 5-6).  Plaintiff responds simply that Defendants arguments are meritless.  (D.E. 14, p. 3).

*Ex parte Young* provides "an equitable exception to Eleventh Amendment sovereign immunity ... [that] allows plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 155-56, 159-160 (1908)).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

The *Ex parte Young* exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Generally, "[a]s long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief." *Williams*, 954 F.3d at 738.

The Court has recognized that Plaintiff has successfully stated ADA and RA claims against Defendants sufficient to move forward past the screening stage. Defendants raise no argument challenging these claims on their merits.[4] Plaintiff's allegations suggest that any possible violations of his ADA and RA rights are ongoing as he continues not to be able to access the CICP program without reasonable accommodations. Plaintiff specifically seeks prospective injunctive relief in the form of receiving certain reasonable accommodations so that he can access and fully participate in the program. Because such

---

[4] While ostensibly bringing their motion under Rule 12(b)(6) as well as Rule 12(b)(1), Defendants offer no arguments challenging whether Plaintiff has stated a claim under either the ADA or RA. Rather, Defendants seek dismissal of Plaintiff's claims for monetary and injunctive relief solely on Eleventh Amendment, or subject-matter jurisdiction, grounds.

relief sought by Plaintiff essentially seeks to address the continuing violations of his ADA and RA rights, the *Ex parte Young* exception applies in this case.

Under the *Ex parte Young* exception, plaintiffs may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. at 155-56).  To plead a claim against a state official, "the plaintiff must allege facts that plausibly imply that the [official] was involved in the challenged decision." *Pickett*, 37 F.4th at 1029 (citing *Haverkamp*, 6 F.4th at 670-71).

Plaintiff's allegations indicate that both Dr. Kwarteng and Warden Sanchez played an active role in denying Plaintiff any reasonable accommodations to participate in the CICP program.  Plaintiff alleges that, despite knowing of Plaintiff's desire to participate in the program, Dr. Kwarteng implemented and enforced policies prohibiting Plaintiff from having a special chair to elevate his leg or to take multiple breaks as needed.  (D.E. 8, pp. 42-43).  Plaintiff likewise alleges that Warden Sanchez denied Plaintiff special seating, multiple breaks, or any kind of slow-paced assistance.  (*Id.* at 45).  Additionally, according to Plaintiff, Dr. Kwarteng refused to provide Plaintiff with any kind of medical order to allow him to participate in the CICP.  (*Id.* at 41).

Overall, Plaintiff advances allegations as part of his *Spears* hearing testimony indicating that the CICP class was made available to Plaintiff at the McConnell Unit, that both Dr. Kwarteng and Warden Sanchez were involved in Plaintiff's ability to access and fully participate in the program, and that they each failed to provide reasonable

accommodations to Plaintiff, either through direct action or enforcement of certain policies, at the unit level.  (D.E. 8, pp. 38-45).  Plaintiff's allegations further suggest that either Dr. Kwarteng or Warden Sanchez may have authority to provide the requested injunctive relief at the unit level to redress Plaintiff's injuries.  Accordingly, the undersigned concludes that Plaintiff may seek injunctive relief under the *Ex parte Young* exception against Dr. Kwarteng and Warden Sanchez.

Plaintiff, however, fails to allege sufficient facts to connect either Director Collier or Dr. Linthicum to the CICP course.  Plaintiff alleges nothing to show that they had any role with respect to Plaintiff's participation in the CICP course or had the requisite authority to implement and/or enforce policies to set forth the accommodations Plaintiff seeks in this case.  *See Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) ("The required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the [law] in question and a demonstrated willingness to exercise that duty.").  Absent any specific allegations connecting Director Collier or Dr. Linthicum to Plaintiff's participation in the CICP, it cannot be plausibly inferred that these defendants played any role in the decisions challenged by Plaintiff as violating the ADA and RA.  *See Haverkamp*, 6 F.4th at 671.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 13) be: (1) denied to the extent they seek dismissal of Plaintiff's ADA/RA claims for injunctive relief against Warden Sanchez and Dr. Kwarteng in their official capacities as barred by the Eleventh Amendment; and (2) granted to the extent they seek

dismissal of Plaintiff's ADA/RA claims for injunctive relief against Director Collier and Dr. Linthicum as barred by the Eleventh Amendment.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 13) be **GRANTED in part** and **DENIED in part**. Defendants' Motion to Dismiss (D.E. 13) should be **GRANTED** to the extent that:

- Plaintiff's claim under the ADA for monetary damages against Defendants in their official capacities is barred by the Eleventh Amendment; and

- Plaintiff's claims under the ADA/RA for injunctive relief against Director Collier and Dr. Linthicum in their official capacities are barred by the Eleventh Amendment.

The undersigned respectfully recommends further that Defendants' Motion to Dismiss (D.E. 13) should be **DENIED** to the extent that:

- Defendants seek Eleventh Amendment immunity as to Plaintiff's claim under the RA for monetary damages against them in their official capacities; and

- Defendants seek Eleventh Amendment immunity as to Plaintiff's ADA/RA claims for injunctive relief against Dr. Kwarteng and Warden Sanchez in their official capacities.

Respectfully submitted on April 27, 2023.

Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).